UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

**OSCAR HERRERA**,

    Plaintiff,

vs.

**CAROLINA K. INC., a Florida
for-profit corporation,**

    Defendant.

_____/

## **COMPLAINT**

Plaintiff OSCAR HERRERA, through undersigned counsel, sues Defendant CAROLINA

K. INC., a Florida for-profit corporation, and alleges as follows:

1.    This is an action for declaratory and injunctive relief, attorney's fees, costs, and

litigation expenses for unlawful disability discrimination in violation of Title III of the Americans

with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36.

This is also an action for declaratory and injunctive relief to prevent the continuing act of trespass

against the Plaintiff's personal property (his personal computer and its hard drive), and for

compensatory damages to Plaintiff for such trespass. Remedies provided under common law for

trespass are not exclusive and may be sought in connection with suits brought under the ADA.

2.    This Court has jurisdiction over this case based on federal question jurisdiction, 28

U.S.C. §1331 and the provisions of the ADA. Plaintiff seeks declaratory and injunctive relief

pursuant to 28 U.S.C. §§2201 and 2202. In addition, this Court has supplementary jurisdiction

over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

1

3.      Venue is proper in this Court as all actions complained of herein and injuries and damages suffered occurred in the Southern District of Florida.

4.      Plaintiff OSCAR HERRERA is a resident of Miami-Dade County, Florida, is *sui juris*, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5.      Plaintiff is and at all relevant times has been a blind and visually disabled person who has been medically diagnosed with "complete blindness" as a result of trauma to both eyes. Because of his condition, Plaintiff is blind and thus is substantially limited in performing one or more major life activities, including, but not limited to, sight, accurately visualizing his world, and adequately traversing obstacles. As such, he is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, *et seq*., and 42 U.S.C. §3602(h). Plaintiff further is an advocate of the rights of similarly situated disabled persons and is a "tester" for the purposes of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

6.      Because he is blind, Plaintiff cannot use his computer without the assistance of appropriate and available auxiliary aids, screen reader software, and other technology and assistance. Screen reader software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned

from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC*, 286 F.Supp.3d 365, 374 (E.D.N.Y. 2017)..

7.      Defendant is a Florida for-profit corporation authorized to do business and doing business in the State of Florida. Defendant owns, operates, and/or controls a chain of three stores selling women's clothing, swimwear, and accessories, as well as home good products, one or more of which Plaintiff intended to patronize in the near future, including the flagship store located at 4300 Northeast 2nd Avenue, Miami, Florida.

8.      Plaintiff's blindness limits him in the performance of major life activities, including sight, and he requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer.

9.      Plaintiff frequently accesses the internet. Because he is blind, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

10.     At all times material hereto, Defendant was and still is an organization that owns, operates, and/or controls a chain of three stores under the name "Carolina K".  Each "Carolina K" store is open to the public. As the owner, operator, and/or controller of these stores, Defendant is defined as a place of "public accommodation" within meaning of the ADA because Defendant is

a private entity which owns, operates, and/or controls "a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(5).

11.     Because Defendant is a store open to the public, each of Defendant's physical stores is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7)(E), and its implementing regulations, 28 C.F.R. Part 36.

12.     Defendant also owns, controls, maintains, and/or operates an adjunct website, https://carolinak.com (the "Website"). One of the functions of the Website is to provide the public information on the locations of Defendant's physical stores. Defendant also sells to the public its merchandise through the Website, which acts as a critical point of sale for Defendant's merchandise that is also available for purchase in, from, and through Defendant's physical stores. In addition, Defendant's Website allows users to arrange from store pickup of merchandise purchased online, purchase electronic gift cards for use online and in the physical stores, fill out an electronic inquiry form to contact and/or be contacted by the physical stores, and sign up for an emailer/newsletter to receive exclusive online offers, benefits, invitations, and discounts for use online and in the physical stores.

13.     The Website also services Defendant's physical stores by providing information on available products, services, tips and advice, editorials, sales campaigns, events, and other information that Defendant is interested in communicating to its customers.

14.     Because the Website allows the public the ability to secure information about the locations of Defendant's physical stores, purchase merchandise also available for purchase in, from, and through the physical stores, arrange from store pickup of merchandise purchased online, purchase electronic gift cards for use online and in the physical stores, fill out an electronic inquiry

form to contact and/or be contacted by the physical stores, and sign up for an emailer/newsletter to receive exclusive online offers, benefits, invitations, and discounts for use online and in the physical stores, the Website has a nexus to, and is an extension of and gateway to, the goods, services, privileges, and advantages of Defendant's physical stores, which are places of public accommodation under the ADA. As an extension of and service, privilege, and advantage provided by a place of public accommodation as defined under the ADA, the Website is an extension of the services, privileges, and advantages made available to the general public by Defendant at and through its brick-and-mortar locations and businesses. Furthermore, the Website is a necessary service and privilege of Defendant's physical stores in that, as a critical point of sale for Defendant's stores, it enables users of the Website to make purchases of Defendant's merchandise that is also available for purchase in, from, and through its physical stores.

15.     Because the public can view and purchase Defendant's merchandise through the Website that is also offered for sale in, from, and through Defendant's physical stores, thus having the Website act as a critical point of sale for Defendant's merchandise that is also sold in, from, and through the physical stores, arrange from store pickup of merchandise purchased online, purchase electronic gift cards for use online and in the physical stores, fill out an electronic inquiry form to contact and/or be contacted by the physical stores, and sign up for an emailer/newsletter to receive exclusive online offers, benefits, invitations, and discounts for use online and in the physical stores, the Website is an extension of, and gateway to the physical stores,  which are places of public accommodation pursuant to the ADA, 42 U.S.C. §12181(7)(E).  As such, the Website is a necessary service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and

enjoyment of the goods, services, privileges, and advantages afforded the non-visually disabled public both online and in the physical stores.

16.     At all times material hereto, Defendant was and still is an organization owning, operating, and/or controlling the Website. Since the Website is open to the public through the internet, by this nexus the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical stores. As such, Defendant has subjected itself and the Website to the requirements of the ADA.

17.     Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize in the near future once the Website's access barriers are removed or remedied, one or more of Defendant's physical stores (including the flagship store located at 4300 Northeast 2nd Avenue, Miami, Florida), and to search for the brick-and-mortar stores, check store hours and merchandise pricing, purchase merchandise online, arrange from store pickup of merchandise purchased online, purchase electronic gift cards for use online and in the physical stores, fill out an electronic inquiry form to contact and/or be contacted by the physical stores, and sign up for an emailer/newsletter to receive exclusive online offers, benefits, invitations, and discounts for use online and in the physical stores. In the alternative, Plaintiff intends to monitor the Website in the near future, as a tester, to ascertain whether it has been remedied and updated to interact properly with screen reader software.

18.     The opportunity to shop and pre-shop Defendant's merchandise,  secure information about the locations of Defendant's physical stores, arrange from store pickup of

merchandise purchased online, purchase electronic gift cards for use online and in the physical stores, fill out an electronic inquiry form to contact and/or be contacted by the physical stores, and sign up for an emailer/newsletter to receive exclusive online offers, benefits, invitations, and discounts for use online and in the physical stores from his home are important and necessary accommodations for Plaintiff because traveling outside of his home as a blind individual is often a difficult, hazardous, frightening, frustrating, and confusing experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

19.     Like many consumers, Plaintiff accesses several websites at a time to help plan his store visits and to compare merchandise, prices, services, sales, discounts, and promotions. Plaintiff may look at several dozen websites to compare features, discounts, services, promotions, and prices.

20.     Beginning in May 2024, Plaintiff attempted on a number of occasions to utilize the Website to browse through the available merchandise and online offers to educate himself as to the merchandise, sales, services, discounts, and promotions being offered, learn about the brick-and-mortar stores, check store hours, and check merchandise pricing with the intent to make a purchase through the Website or in, from, and through one of the physical stores. Plaintiff, also attempted to access and utilize the Website in his capacity as a tester to determine whether it was accessible to blind and visually disabled persons, such as himself, who use screen reader software to access and navigate company websites.

21.     Plaintiff utilizes available screen reader software that allows individuals who are blind and visually disabled to communicate with websites. However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals

using keyboards and available screen reader software. These access barriers, one or more of which were experienced by Plaintiff, are pervasive and, as confirmed by Plaintiff's expert, include the following (with reference to the Web Content Accessibility Guidelines ("WCAG") 2.1 Level A and AA):

a)      Level A Guideline 1.3.1 – Info and Relationships (Information, structure, and relationships conveyed through presentation can be programmatically determined or are also available in text) – Inaccessible size guides; the content of the guides is announced but none of it is labeled. This issue prevents the screen reader user from understanding any of the relationships; for example, the screen reader user is not informed that they are on a table. Additionally, none of the column labels, column numbers, and row labels receive announcement.

b)      Level A 2.4.3 – Focus Order (website provides focus in a logical order that preserves meaning and operability) – A pop-up that receives no announcement when displayed; after adding an item to the bag, "adding ellipsis" is announced and after a few seconds, the "My Bag" pop-up is displayed to show that an item was added and that further allows for users to check out directly from the pop-up. This pop-up, however, was not announced. Additionally, the screen reader user did not hear that the item was added nor did they hear that the "My Bag" dialog was displayed; focus instead remained on the underlying page and did not move on to the pop-up.

c)      Level A Guideline 2.4.4 – Link Purpose (In Context) (Link purpose is clear from its context) – An unlabeled "Return to Home" graphic logo; it is announced only as "slash link".

d)      Leve A Guideline 3.3.2 – Labels or Instructions (Elements are labeled and give instructions) – Despite clear visual differences that are indicated by both the text being displayed in a lighter color and the unavailability of an out-of-stock size button, product size buttons that are

announced as though they are all the same despite whether they are in stock. Additionally, the screen reader user cannot select an unavailable button.

e)      Level A Guideline 3.3.2 – Labels or Instructions (2) (Elements are labeled and give instructions) – The simultaneous and continual announcement of content in a promotional pop-up, which made navigating through the pop-up difficult; for example, when focus is on the "close" button, email address field, or the "Join Now" field, all the text shown onscreen is announced at once. The only text that does not receive announcement is the percentage sign, and so the screen reader user hears "10 off your first order"; from this, it is unclear whether this "10" represents ten dollars or ten percent off.

f)      Level A Guideline 4.1.2 – Name, Role, Value (All interactive elements are announced with a clear name, role and value) – Although announced with two roles, a "Cart" button that lacks a label; it is announced as "zero button link". If the cart quantity changes to one, for example, it gets announced as "one button link".

g)      Level A Guideline 4.1.2 – Name, Role, Value (2) (All interactive elements are announced with a clear name, role and value) – An unlabeled "Search" button; it is announced as "button banner landmark."

h)      Level AA Guideline 4.1.3 – Status Messages (If a status message is presented and focus is not set to that message then the message must be announced to screen reader users) – As is required, the lack of announcement for two displayed messages; after selecting a product size that is not available, a sold-out message gets displayed above the "Size" buttons and another message gets displayed below the fold further on down the page, but neither receives announcement. It takes several attempts before the screen reader user hears the "Sold Out"

message, which is counterproductive as he does not hear the announcement when initially making

a size selection, which results in his not being immediately aware that his size selection is sold out.

22.     Plaintiff attempted to locate an "accessibility" notice, statement, or policy on the

Website that would direct him to a webpage with contact information for disabled individuals who

have questions or concerns about, or who are having difficulties accessing, navigating, and

communicating with, the Website. Although the Website appeared to have an "accessibility"

statement linked from it's home page as well as a third-party "accessibility" widget/plugin

provided by "audioeye" installed,  that "accessibility" statement and "accessibility" widget/plugin,

when activated and tested, still could not be effectively accessed by, continued to be a barrier to,

and did not provide a viable alternative means to access and navigate the Website for blind and

visually disabled persons, including Plaintiff.  Plaintiff, thus, was unable to receive any meaningful

or prompt assistance through the "accessibility" statement and "accessibility" widget/plugin to

enable him to equally, quickly, fully, and effectively navigate the Website.

23.     The fact that Plaintiff could not communicate with or within the Website left him

feeling excluded, frustrated, and humiliated, and gave him a sense of isolation and segregation, as

he is unable to participate in the same shopping experience, with the same access to the

merchandise, sales, services, discounts, and promotions, as provided at the Website and in the

physical stores as the non-visually disabled public.

24.     Plaintiff desires and intends in the near future once the Website's access barriers

are removed or remedied to patronize one or more of Defendant's physical stores and to use the

Website, but he is presently unable to do so as he is unable to effectively communicate with

Defendant due to his blindness and the Website's access barriers. Alternatively, as a tester using

screen  reader  software,  Plaintiff  is  unable  to  fully  and  effectively  access,  navigate,  and

communicate with Defendant through the Website due to his blindness  and the Website's access barriers. Thus, Plaintiff and others who are blind and with visual disabilities will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

25.     Because of the nexus between Defendant's physical stores and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's physical stores for its operation and use, the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical stores, which are places of public accommodation subject to the requirements of the ADA.

26.     On information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

27.     On information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

28.     On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

29.     On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

30.     On information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

31.     On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

32.     On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

33.     Defendant has not created and instituted a useful and effective Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

34.     Defendant has not created and instituted on the Website a useful and effective page for individuals with disabilities, nor displayed a proper link and information hotline, nor created a proper information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the visually disabled and/or blind communities.

35     The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility.

36.     Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of purchasing Defendant's merchandise offered on the Website and in the physical stores from their homes.

37.     Defendant thus has not provided full and equal access to, and enjoyment of, the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and the physical stores in contravention of the ADA.

38.     Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

39.     The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet e-commerce websites such as the Website at issue in the instant action.

40.     Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

41.     Defendant is, and at all relevant times has been, aware of the need to provide full and equal access to all visitors to the Website.

42.      The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

43.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with the Website's access and operation.

44.     Notice to Defendant is not required because of Defendant's failure to cure the violations.

45.     Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

46.     Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

## Trespass Violations

47.     Plaintiff utilizes his computer to access websites such as the Website.

48.     Plaintiff uses his computer as a method of conveyance of his personal information. Plaintiff thus stores his personal information and retains his browsing history on his computer.

49.     When a user accesses the Website, Defendant places information tracking and gathering software on the user's personal computer and hard drive without the user's advance consent or knowledge. Defendant also plants browser cookies on a user's computer and hard drive to identify websites that the user has previously visited by accessing the user's web browser history.

50.     Although the Website does have a "Privacy Policy" linked from its home page, Defendant does not inform the Website user that the user's personal information and browsing history are being collected and used for targeted marketing and advertising. Therefore, and because of his blindness, Plaintiff was unable to comprehend the Website and thus had no choice, and likewise no knowledge, of Defendant's installation of data and information tracking and gathering software on his computer and the collection of his browsing history and analytics.

51.     Thus, through the Website, Defendant has committed a trespass against Plaintiff, since the Website places information tracking and gathering software on the Plaintiff's computer without Plaintiff's knowledge or consent.

## COUNT I – VIOLATION OF THE ADA

52.     Plaintiff re-alleges paragraphs 1 through 46 as if set forth fully herein.

53.     Pursuant to 42 U.S.C. §12181(7)(E), Defendant is a public accommodation under the ADA and thus is subject to the ADA.

54.     Pursuant to 42 U.S.C. §12181(7)(E), the Website is covered under the ADA because it provides the general public with the ability to locate and learn about Defendant's physical stores, purchase merchandise that is also available for purchase in, from, and through the physical stores, arrange from store pickup of merchandise purchased online, purchase electronic gift cards for use online and in the physical stores, fill out an electronic inquiry form to contact and/or be contacted by the physical stores, and sign up for an emailer/newsletter to receive exclusive online offers, benefits, invitations, and discounts for use online and in the physical stores. The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendant's physical stores. Further, the Website serves to augment Defendant's physical stores by providing the public information about the stores and by educating the public as to Defendant's available merchandise sold through the Website and also available for purchase in, from, and through the physical stores.

55.     Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

56.     Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities,

unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

57.     In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

58.     Defendant's Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

59.     Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to and enjoyment of the goods, information, and services that Defendant has made available to the public on the Website and in the physical stores in violation of 42 U.S.C. §12101, *et seq*, and as prohibited by 42 U.S.C. §12182, *et seq*.

60.     The Website was subsequently visited by Plaintiffs expert in June 2024, and the expert determined that many of the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed. Despite being a defendant in a prior ADA website accessibility lawsuit, which resulted in a confidential settlement agreement that obligated Defendant to fully remediate the Website, Defendant has thus made insufficient material changes or improvements to the Website to enable its full and equal use, and enjoyment by, and accessibility to, blind and visually disabled persons such as Plaintiff. Also, although the Website appeared to have an "accessibility" statement linked from its home page as well as a third-party

"accessibility" widget/plugin provided by "audioeye" installed, that "accessibility" statement and "accessibility" widget/plugin, when activated and tested, still could not be effectively accessed by, continued to be a barrier to, and did not provide a viable alternative means to fully and equally access and navigate the Website for blind and visually disabled persons, including Plaintiff. Defendant furthermore has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals. Defendant thus has failed to make reasonable modifications in its policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302.

61.     More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

62.     There are readily available, well-established guidelines on the internet for making websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard.  Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant.

63.     Defendant has violated the ADA -- and continues to violate the ADA -- by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of screen reader software to comprehend and access internet websites.  These violations within the Website are ongoing.

64.     The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

65.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

66.     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

67.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

68.     As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

69.     As a direct and proximate result of Defendant's failure to provide an ADA compliant Website, with a nexus to its brick-and-mortar locations, Plaintiff has suffered an injury in fact by being denied full and equal access to, enjoyment of, and communication with Defendant's Website and physical stores.

70.     Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

71.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

a)  Require Defendant to adopt and implement a web accessibility policy to make publicly available, and directly link from the homepage of the Website, a functional statement of the policy to ensure persons with disabilities have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the physical stores through the Website.

b)  Require Defendant to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website being made readily accessible, provide an alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

c)  Require Defendant to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendant's physical stores and becoming informed of and purchasing Defendant's merchandise, and during that time period prior to the Website being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and the physical stores.

72.     Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

A.  A declaration that Defendant's Website is in violation of the ADA;

B.  An Order requiring Defendant, by a date certain, to update the Website, and continue to monitor and update the Website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

C.  An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a Website accessibility coordinator, a Website application accessibility policy, and providing for Website accessibility feedback to ensure compliance thereto;

D.  An Order directing Defendant, by a date certain, to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its Website;

E.  An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for the Website to ensure effective communication for individuals who are visually disabled;

F.  An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's Website to be fully accessible to the visually disabled;

G.  An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

H.  An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of the Website to identify any instances where the Website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

I.  An Order directing Defendant, by a date certain, to make publicly available and directly link from the Website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the Website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

J.  An award to Plaintiff of his reasonable attorney's fees, costs and expenses; and

K.  Such other and further relief as the Court deems just and equitable.

## COUNT II – TRESPASS

73.  Plaintiff re-alleges paragraphs 1 through 51 as if set forth fully herein.

74.     Plaintiff's tangible personal property, being his computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant on each and every date that the Plaintiff has accessed Defendant's Website, due to Defendant's employment of information tracking and gathering software and analytics which are present on and throughout the Website.

75.     At all relevant times, Plaintiff did not consent to and was unaware that the Website was placing the information tracking and gathering software on his computer and its hard drive due to his blindness and his inability to effectively communicate with and fully and equally access and navigate the Website.

76.     Plaintiff did not consent to the placement of information tracking and gathering software on his computer and its hard drive; therefore, Defendant has committed a trespass against Plaintiff by placing such software on his computer and its hard drive without his knowledge or consent.

77.     By the acts described hereinabove, Defendant has repeatedly and persistently engaged in trespass of Plaintiff's personal property in violation of Florida common law against trespass to chattel.

78.     Defendant's installation, operation, and execution of information tracking and gathering software on Plaintiff's computer have directly and proximately impaired the condition and value of the Plaintiff's computer, thereby causing Plaintiff damages.

79.     The Website has a "Privacy Policy" that discusses the automatic gathering of information from and the automatic placement of cookies and other information gathering software on, computers of users of the Website such as Plaintiff. A copy of that "Privacy Policy" is attached hereto as Exhibit "A" and its contents are incorporated herein by reference.

80.     Defendant's trespass to chattel, nuisance, and interference has caused real and substantial damage to Plaintiff as follows:

a)  By consuming the resources of and/or degrading the performance of Plaintiff's computer (including space, memory, processing cycles, and internet connectivity);

b)  By infringing on Plaintiff's right to exclude others from his computer;

c)  By infringing on Plaintiff's right to determine, as the owner of his computer, which programs should be installed and operated on his computer;

d)  By compromising the integrity, security, and ownership of Plaintiff's computer; and

e)  By forcing Plaintiff to expend money, time, and resources in order to remove the programs that had been installed on his computer without notice or consent.

81.     Defendant's actions were taken knowingly, willfully, intentionally, and in reckless disregard for Plaintiff's rights under the law.

WHEREFORE, Plaintiff demands a judgment be entered against Defendant for all of Plaintiff's compensatory damages, interest, costs, and such further relief as the Court deems just and equitable.

DATED:  June 28, 2024.

**RODERICK V. HANNAH, ESQ., P.A.**
Counsel for Plaintiff
4800 N. Hiatus Road
Sunrise, FL 33351
T. 954/362-3800
954/362-3779 (Facsimile)
Email:  rhannah@rhannahlaw.com

**LAW OFFICE OF PELAYO DURAN, P.A.**
Co-Counsel for Plaintiff
4640 N.W. 7th Street
Miami, FL 33126-2309
T. 305/266-9780
305/269-8311 (Facsimile)
Email: duranandassociates@gmail.com

By:___ _s/ Roderick V. Hannah_ ___
     RODERICK V. HANNAH
     Fla. Bar No. 435384

By:___ _s/ Pelayo M. Duran_ ___
     PELAYO M. DURAN
     Fla. Bar No. 0146595